UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KRISTENE HAYWOOD, individually and as next friend of KG, a minor, <br><br> Plaintiff <br> v. <br><br> FITCHBURG PUBLIC SCHOOLS, <br><br> Defendant | ) ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. 4:24-cv-40071-MRG |

# FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

## Parties, Jurisdiction, and Venue

1. Plaintiff Kristene Haywood ("Ms. Haywood") is an individual residing at 695 Blossom Street, Fitchburg, MA 01420, who brings this lawsuit on her own behalf as well as on behalf of her minor daughter KG ("KG"), an individual who resides at the same address.

2. Defendant Fitchburg Public Schools ("FPS") is a Massachusetts public school district serving Pre-Kindergarten through Twelfth Grade with a principal business address of 376 South Street Fitchburg, MA 01420.

3. Massachusetts has jurisdiction over the parties pursuant to M.G.L. c. 233A § 2.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

5. Venue is appropriate.

## Facts

5. KG and her mother are Black.

6. Ms. Haywood takes pride in Black culture and strives to pass that pride on to her children through teaching and example.

7. Hair has traditionally been a centerpiece of Black culture as a symbol of identity, resistance, creative expression, and freedom.

8. Braided hair connects contemporary Black women and girls with thousands of years of history from African cultures predating European colonialism, through slavery in America, to the present.[1]

9. For Black women and girls in America, wearing braids (often decorated with beads) serves as an "outward expression of self-acceptance and self-love."[2]

10. Not only have Black Americans traditionally used hairstyles expressively, but there is also a long history in America of hair – including braided hairstyles – being used to classify and discriminate against individuals on the basis of race.[3]

11. That history specifically includes hair discrimination in schools, which "reinforces the othering of Black children and is another way that Black identity is policed."[4]

12. Since before she began attending school, KG wore her hair in braids with beads as an essential expression of her Black identity and heritage.

13. In or around September 2021, KG began attending kindergarten at Reingold Elementary School (the "School") in Fitchburg, Massachusetts.

14. KG's teacher at the time was Julie Boutwell ("Mrs. Boutwell").

15. Ms. Boutwell is white.

---

[1] Dirshe, Siraad, "Respect Our Roots: A Brief History of Our Braids," available at Respect Our Roots: A Brief History Of Our Braids | Essence.

[2] Id.

[3] Congressional Findings, H.R. 2216 § 2(a) (1-9), available at Text - H.R.2116 - 117th Congress (2021-2022): Creating a Respectful and Open World for Natural Hair Act of 2022 | Congress.gov | Library of Congress.

[4] Legal Defense Fund, National Hair Discrimination FAQ, available at Natural Hair Discrimination FAQ (naacpldf.org).

16. As she had prior to attending Reingold Elementary School, KG regularly wore braids and beads in Ms. Boutwell's class.

17. In November 2021, KG's older sister contracted COVID-19 and KG quarantined at home for ten days in compliance with FPS policy in effect at the time.

18. On November 26, 2021, the Friday before KG was supposed to return to school, KG asked Ms. Haywood to remove the beads and braids from her hair.

19. Ms. Haywood asked KG why she wanted to remove her beads and braids.

20. KG told Ms. Haywood that Ms. Boutwell had said the braids needed to be removed.

21. KG told Ms. Haywood that Ms. Boutwell had asked her "Can you take my beads out before I go back to school?" and explained that "the teacher told me that they are distracting, loud, and other kids are playing with my hair."

22. Ms. Haywood immediately emailed Mrs. Boutwell, and subsequently spoke with her by phone.

23. During their phone conversation, Ms. Haywood explained to Ms. Boutwell that she felt that her comments about her daughter's hair were not appropriate, because her daughter's hair is an important component of her identity.

24. Ms. Boutwell responded that she "didn't mean it like that" but that the beads were "distracting to her [KG] and others."

25. Ms. Haywood said that if there was a concern about her daughter's hair it should have been addressed to Ms. Haywood, and expressed frustration that she was just now learning of what had apparently been an ongoing concern.

26. Ms. Haywood subsequently learned that Ms. Boutwell had humiliated KG by making the comments about her beads in front of the entire class.

27. On November 30, Ms. Haywood met with Justin Sparks, the Interim Principal of Reingold Elementary School at the time, to discuss her concerns about KG's apparent disparate treatment.

28. Principal Sparks told Ms. Haywood that Mrs. Boutwell was apologetic about her remarks, and that he wanted to meet with Ms. Haywood and Mrs. Boutwell together.

29. On December 1, Ms. Haywood met with Principal Sparks, Mrs. Boutwell, and Eva Kelly, the school choice officer at the school.

30. During that meeting, Ms. Haywood once again explained that she was concerned not only about the comments regarding her daughter's hair, but the apparent insensitivity to the racist undertones behind those comments.

31. Mrs. Boutwell offered a perfunctory apology for her remarks, but then alleged for the first time that KG's hair posed a supposed "safety" issue and made vague comments about having her own "native children at home."

32. These statements seemed calculated to distract from Ms. Haywood's concern that KG was being treated differently on account of her race, and they offensively implied that Ms. Boutwell's personal circumstances were somehow analogous to Ms. Haywood's.

33. Mrs. Boutwell also appeared to threaten Ms. Haywood with a "formal complaint [of] slander."

34. At this meeting, Ms. Kelly agreed to help KG transfer to a new school if Ms. Haywood wanted her to.

35. On or about December 6, 2021 Ms. Haywood met again with Principal Sparks and discussed KG's transfer to Crocker Elementary School.

36. That same day, Principal Sparks acknowledged in an email that KG had felt like she did not belong at Reingold Elementary School and that he needed "to have further conversations with this teacher and as a school community."

37. Separately, Ms. Haywood met with Superintendent Robert Jokela ("Superintendent Jokela") and requested that Ms. Boutwell be required to undergo anti-bias training.

38. Superintendent Jokela did not appear to take Ms. Haywood's concerns seriously and said that anti-bias training plans were "in the works" but might not happen until the following school year.

39. It was clear to Ms. Haywood that FPS had not conducted or arranged for any training that would have adequately prepared its teachers and administrators to understand the importance and cultural context of protective hairstyles as defined in M.G.L. c. 4 § 7.

40. It was likewise clear to Ms. Haywood that further discussion with Superintendent Jokela, or anyone else associated with FPS, was futile because the District was uninterested in taking action to address the underlying causes of what had happened once it perceived KG's situation as having been "resolved."

41. On or around December 9, 2021, KG transferred to Crocker Elementary School.

42. Following her transfer, KG has continued to exhibit signs of distress and trauma.

43. For example, KG refused to ride the bus to school because she was afraid of how other children would perceive her.

44. KG continued to ask Ms. Haywood if she could have the braids and beads taken out of her hair, because she was afraid "her new teacher and friends [wouldn't] like her."

45. KG now wears her hair in braids, but remains unwilling to put beads in her hair out of concern for how they will be viewed by teachers and classmates.

46. KG continues to suffer stress and anxiety every time she has her hair done.

47. To the best of Ms. Haywood's knowledge, none of KG's white classmates at either Reingold Elementary School or Crocker Elementary School have been asked to or required to change their hair for any reason.

48. Ms. Haywood has complied with all applicable prerequisites to filing this action, including the timely submission of a presentment letter pursuant to M.G.L. c. 258 § 4.

49. On or about July 1, 2022, Ms. Haywood send a presentment letter through her counsel to FPS.

50. After Ms. Haywood sent her presentment letter to FPS, the Massachusetts Appeals Court issued its decision in *John Doe v. Cambridge Public Schools*, 101 Mass. App. Ct. 482, (Mass. App. Ct. 2022), which announced for the first time that in order to comply with M.G.L. c. 258 § 4 a putative plaintiff asserting claims against a school district must send her presentment letter to the mayor or chief executive officer of the city in which the school district lies.

51. On or about October 3, 2023, Ms. Haywood sent a second presentment letter through her counsel to the Mayor of Fitchburg in compliance with the holding in *Doe v. Cambridge Public Schools*.

52. Neither FPS nor the City of Fitchburg provided a substantive response of any kind to either presentment letter.

53. Separately from the two presentment letters, Ms. Haywood filed a complaint against FPS with the Massachusetts Commission Against Discrimination.

54. Neither FPS nor the City of Fitchburg provided a substantive response of any kind to the MCAD filing.

## COUNT I
## Violation of M.G.L. c. 76 § 5

55. The Plaintiff restates the allegations in each of the foregoing paragraphs and incorporates them herein.

56. KG's beads and braids qualified as a "protective hairstyle" defined by M.G.L. c. 4 § 7.

57. As described in the foregoing paragraphs, FPS engaged in discrimination on the basis of race when it treated KG differently from her similarly-situated classmates by requiring her to remove her beads and braids as a condition for attending school.

58. FPS engaged in discrimination on the basis of race by failing to ensure adequate training for its teachers and administrators, which would have prevented KG from being subjected to the treatment described in the foregoing paragraphs.

59. FPS' discriminatory treatment of KG and her mother had the effect of necessitating KG's relocation to a different school, a disruptive process that caused both KG and Ms. Haywood emotional distress.

60. FPS' discriminatory treatment of KG and her mother violated M.G.L. c. 76 § 5.

61. As a result of FPS' discriminatory treatment, KG and her mother have suffered significant emotional distress.

62. Prior to filing this action, KG and Ms. Haywood had exhausted any available administrative remedies.

63. Alternatively or additionally, further efforts to exhaust administrative remedies would be futile given FPS' refusal to take meaningful action to address the Plaintiffs' request for training and policies related to protective hairstyles and refusal to communicate meaningfully with Ms. Haywood.

64. Pursuant to M.G.L. c. 76 § 16, the Defendant is liable to KG for her compensatory damages as proven at trial.

## COUNT II
### Violation of Constitutional Rights – Freedom of Expression

65. The Plaintiff restates the allegations in each of the foregoing paragraphs and incorporates them herein.

66. KG's wearing of beads and braids constituted expression protected by the First Amendment of the United States Constitution.

67. Through its actions described above, FPS restricted KG's and Ms. Haywood's freedom of expression in violation of their rights under the First Amendment of the United States Constitution and Part 1, Article XVI of the Massachusetts Constitution.

68. As described in the foregoing paragraphs, FPS violated the Plaintiffs' rights to freedom of expression when it treated KG differently from her similarly-situated classmates by requiring her to remove her beads and braids as a condition for attending school.

69. FPS likewise violated the Plaintiffs' rights to freedom of expression by failing to ensure adequate training for its teachers and administrators, which would have prevented KG from being subjected to the treatment described in the foregoing paragraphs.

70. As a result of FPS' discriminatory treatment, KG and her mother have suffered significant emotional distress.

71. Pursuant to 42 U.S.C. §1983 and M.G.L. c. 12 § 11I, FPS is liable to Ms. Haywood in her individual capacity and as KG's next friend for compensatory damages as proven at trial as well as for an award of her attorneys' fees and costs incurred in bringing this action.

## COUNT III
### Violation of Constitutional Rights – Equal Protection

72. The Plaintiff restates the allegations in each of the foregoing paragraphs and incorporates them herein.

73. Through its actions described above, FPS treated KG and her mother differently from similarly situated students and their parents on the basis of race and thereby violated KG's and Ms. Haywood's rights to equal treatment under the Fourteenth Amendment of the United States Constitution and Article 106 of the Amendments to the Massachusetts Constitution.

74. As described in the foregoing paragraphs, FPS engaged in discrimination on the basis of race when it treated KG differently from her similarly-situated classmates by requiring her to remove her beads and braids as a condition for attending school.

75. FPS likewise engaged in discrimination on the basis of race by failing to ensure adequate training for its teachers and administrators, which would have prevented KG from being subjected to the treatment described in the foregoing paragraphs.

76. FPS' failure to ensure adequate training was an intentional choice made despite significant publicity and attention surrounding Massachusetts' enactment of the "Massachusetts Crown Act" and the advocacy that led to it.

77. As a result of FPS' discriminatory treatment, KG and her mother have suffered significant emotional distress.

78. Pursuant to 42 U.S.C. §1983 and M.G.L. c. 12 § 11I, FPS is liable to Ms. Haywood in her individual capacity and as KG's next friend for compensatory damages as proven at trial as well as for an award of her attorneys' fees and costs incurred in bringing this action.

## COUNT IV
## Violation of Constitutional Rights – Procedural Due Process

79. The Plaintiff restates the allegations in each of the foregoing paragraphs and incorporates them herein.

80. KG had a property interest in attending the public school in which she had been enrolled.

81. Through its actions described above, FPS deprived KG of her property interest without constitutionally adequate process in violation of KG's right to procedural due process under the Fourteenth Amendment of the United States Constitution and Part 1, Article XII of the Massachusetts Constitution.

82. As a result of FPS' discriminatory treatment, KG and her mother have suffered significant emotional distress.

83. Pursuant to 42 U.S.C. §1983 and M.G.L. c. 12 § 11I, FPS is liable to Ms. Haywood in her capacity as KG's next friend for compensatory damages as proven at trial as well as for an award of her attorneys' fees and costs incurred in bringing this action.

## COUNT V
## Violations of 42 U.S.C. § 2000d *et seq.*

84. The Plaintiff restates the allegations in each of the foregoing paragraphs and incorporates them herein.

85. FPS qualifies as a recipient of federal funds for purposes of 42 U.S.C. § 2000d.

86. Through its actions and omissions described herein, FPS discriminated against KG on the basis of race in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*.

87. Principal Sparks and Superintendent Jokela, and FPS through them, had actual knowledge of the discriminatory treatment described herein, and acted with deliberate indifference in failing to rectify the situation.

88. As a result of FPS' discriminatory treatment, KG and her mother have suffered significant emotional distress.

89. FPS is liable to Ms. Haywood as KG's next friend for compensatory damages as proven at trial as well as for an award of her attorneys' fees and costs incurred in bringing this action.

## COUNT VI
### Negligent Infliction of Emotional Distress

90. The Plaintiff restates the allegations in each of the foregoing paragraphs and incorporates them herein.

91. FPS owed KG a duty of care, as a young child attending its schools.

92. FPS breached its duty of care by failing to ensure adequate training for its teachers and administrators, which would have prevented KG from being subjected to the treatment described in the foregoing paragraphs.

93. As a result of FPS' discriminatory treatment, KG has suffered significant emotional distress.

94. KG's emotional distress manifested with physical symptoms including but not limited to loss of sleep and anxiety.

95. When KG has her hair done, she suffers anxiety so severe that her body shakes.

96. KG's emotional distress resulted directly from FPS' actions in singling her out for her cultural expression and restricting her right to that expression at school.

97. A reasonable person in KG's situation would have suffered emotional distress under the same circumstances.

98. FPS is liable to Ms. Haywood as KG's next friend for compensatory damages as proven at trial.

WHEREFORE, the Plaintiff requests that this Honorable Court enter the following relief:

A. Enter judgment in her favor according to her proof at trial;

B. Award her all her costs of suit, interest and attorneys' fees;

C. Award her treble damages with respect to her unpaid wages;

D. Award her compensatory damages; and

E. Award her such other relief as this Court deems just and appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.**

Respectfully submitted,

Plaintiff Kristine Haywood
By her attorney,

*/s/Benjamin C. Rudolf*
Benjamin C. Rudolf, BBO #: 667695
Rudolf, Smith, Griffis & Ruggieri, LLP
446 Main Street, Suite 1503
Worcester, MA 01608
p. (508) 425-6330
rudolf@rudolfsmith.com

Dated: September 24, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for the Defendant by email as well as automatically through filing it with the Court's CM/ECF system.

*/s/Benjamin C. Rudolf*
Benjamin C. Rudolf

Dated: September 24, 2024