UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KRISTENE HAYWOOD, individually and as next friend to KG,[1] *Plaintiffs*, <br><br> VS. <br><br> FITCHBURG PUBLIC SCHOOLS, *Defendant*. | ) ) ) ) ) ) ) ) ) )  C.A. NO. 4:24-cv-40071-MRG |

**FITCHBURG PUBLIC SCHOOLS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS AMENDED COMPLAINT**

## I.   INTRODUCTION

In their Amended Complaint, the plaintiffs allege that the defendant Fitchburg Public Schools (the "District") violated their various state and federal civil rights arising from an alleged incident in which KG was asked to remove beads from her braided hair. Plaintiff Kristene Haywood, NG's mother, also alleges that she suffered emotional distress. For the reasons that follow, this Court should grant the District's Motion to Dismiss with prejudice and enter final judgment in its favor.

## II.   ALLEGED FACTS[2]

KG is a minor student attending Fitchburg Public Schools. Both KG and Haywood are Black. [ECF No. 1 at ¶ 5]. For many years, KG wore her hair in braids with beads "as an essential expression of her Black identity and heritage." [Id. at ¶ 12]. Sometime in September 2021, one of KG's teachers, Julie Boutwell, told her that she needed to remove the beads from her hair because

---

[1]   The Fitchburg Public Schools uses a pseudonym in place of the student plaintiff due her age.

[2]   The District disputes many of the allegations in the Amended Complaint, however any well-pleaded factual allegations are presumed true solely for the purposes of this Motion. See, e.g., Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007).

1

"they are distracting, loud, and other kids [were] playing with [NG's] hair." [Id. at ¶ 21]. Boutwell allegedly made these comments in front of the class. [Id. at ¶ 26]. Haywood contacted Boutwell to complain; Boutwell stated that she didn't mean the request to be taken as a comment on KG's cultural or ethnic identity, but repeated that the beads were distracting KG and others. [Id. at ¶¶ 22-24]. Over the course of several weeks, Haywood had various meetings with administrators, including former Interim Principal Justin Sparks, school choice officer Eva Kelly, Boutwell, and former Superintendent Robert Jokela. During these meetings, Boutwell apologized for her remarks and, according to Haywood, stated for the first time that KG's hair posed a "safety risk[,]" made "vague comments about having her own 'native children at home[,]'"[3] and "threaten[ed] Ms. Haywood with a 'formal complaint [of] slander." [Id. at ¶¶ 31-33 (final bracket in original)]. At the end of the meeting, Kelley agreed to help KG transfer to a new school within the District. [Id. at ¶ 34]. Haywood also had a meeting with Superintendent Jokela and asked him to require Boutwell to undergo "anti-bias training." [Id. at ¶ 37]. According to Haywood, Superintendent Jokela "did not appear to take [her] concerns seriously and said that anti-bias training plans 'were in the works' but might not happen until the following school year.'" [Id. at ¶ 38]. NG eventually did transfer to a different elementary school within the District, but apparently "continued to exhibit signs of distress and trauma" including refusing to ride the bus and refusing to put beads in her hair out of fear for how students and teacher would perceive her. [Id. at ¶¶ 40-43]. Finally, Haywood alleges that the District has never required any white students to change their hair for any reason. [Id. at ¶ 44].

---

[3] As a point of fact, Boutwell has two adopted, Puerto Rican children.

2

## III. STANDARD OF REVIEW

This Court is well familiar with the standard of review on a motion to dismiss, so the District will not tarry. This Court "take[s] the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55–56 (1st Cir. 2012). Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.[4] District courts should "stop short . . . of swallow[ing] the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999) (ellipsis added; other alteration in original). Dismissal is appropriate where a plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 84 (1st Cir. 2008).

## ARGUMENT

The plaintiffs bring six counts against the District: Count I alleging violation of M.G.L. c. 76, § 5; Count II alleging violation of freedom of expression brought pursuant to 42 U.S.C. § 1983 ("Section 1983") and M.G.L. c. 12, §§ 11H-11I (the "MCRA"); Count III alleging violation of equal protection brought pursuant to Section 1983 and the MCRA; Count IV alleging violation of procedural due process brought pursuant to Section 1983 and the MCRA; Count V alleging violation of 42 USC. § 2000d ("Title VI"); and Count VI alleging negligent infliction of

---

[4] Unless otherwise noted, all internal citations and quotations are omitted.

3

emotional distress ("NIED"). The District seeks dismissal with prejudice of all counts alleged against it.[5]

## I. THE FEDERAL CLAIMS

### A. Counts II-IV Should Be Dismissed Because the Amended Complaint Fails to Adequately Plead Municipal Liability, Fails to State a Claim, and the District Retains its Sovereign Immunity.

The District is entitled to dismissal with prejudice of Counts II-IV alleging various state and federal civil rights claims for several reasons. First, there is no basis to impose municipal liability under Section 1983 against the District where the Amended Complaint fails to identify any unconstitutional custom, policy, or practice. Second, the Amended Complaint substantively fails to state a claim under the Fourteenth Amendment. Third, the District is protected from suit by sovereign immunity for claims brought under the MCRA. Fourth, the Amended Complaint fails to plausibly allege threats, intimidation, or coercion necessary to impose liability under the MCRA. The District addresses these arguments in turn, starting with the federal claims and their state-law cognates.

#### 1. The District is Entitled to Dismissal Because the Amended Complaint Fails to Plausibly Allege Municipal Liability.

In their Amended Complaint, the plaintiffs seemingly clarify that their Section 1983 claims are predicated on an alleged failure to train and/or supervise rather than on an official custom, policy, practice, or final policy-maker authority. *Compare* Pembaur v. Cincinnati, 475 U.S. 469, 483 (1986) (custom, policy, practice, and final policy-maker authority) *with* Connick v. Thompson,

---

[5] The District addresses the federal claims and their direct state counterparts (Counts II-IV) first before circling back to the state claims that have no federal cognate (*i.e.*, Count I and Count VI).

4

563 U.S. 51, 61 (2011) (failure to train).[6] "The Supreme Court has . . . held that there are 'limited circumstances' in which a municipality's lack of training or supervision is equivalent to an official governmental policy for purposes of this analysis. Those circumstances occur when the failure to train or supervise amounts to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Dew v. City of Bos., 405 F. Supp. 3d 294, 303 (D. Mass. 2019) (Gorton, J.) (alteration in original).

The Supreme Court has described deliberate indifference as "'a stringent standard of fault, requiring proof that a municipal actor disregarded a *known or obvious* consequence of his action' or inaction." Porto v. Town of Tewksbury, 488 F.3d 67, 73 (1st Cir. 2007) (quoting Bd. of the County Commrs. v. Brown, 520 U.S. 397, 410 (1997) (emphasis added)). "[A] claim that the school system could or should have done more is insufficient to establish deliberate indifference." Id. Deliberate indifference "require[es] proof that a [defendant] disregarded a known or obvious consequence of [its] action or inaction." Id. For purposes of this standard, a District's actions will be considered "deliberately indifferent" "only where the [District's] response . . . or lack thereof is *clearly unreasonable* in light of the known circumstances." Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 648 (1999) (emphasis added).

Here, the allegations show that a day after learning of the incident, Haywood met with Interim Principal Sparks, School Choice Officer Kelly, and Boutwell to address the concerns; during that meeting Boutwell apologized and indicated that she did not intend her comment to be anything more than addressing a concern for NG and other students being distracted in class.[7]

---

[6] If the District has misapprehended the theory of municipal liability, then the District will address the absence of municipal liability based on an official custom, policy, or practice, or action by a final policy-maker in a Reply Memorandum.

[7] Notably, a plaintiff's subjective belief that a teacher discriminated against them on the basis of race and/or national origin is not sufficient to create an inference the school district had

[ECF No. 13 at ¶¶ 27-31]. School Choice Officer Kelly committed to assisting Haywood in having NG transferred to a different school if she chose. [Id. at ¶ 34]. Additionally, Interim Principal Sparks told Haywood during a separate meeting that he "needed 'to have further conversations with [Boutwell] and as a school community.'" [Id. at ¶ 36]. Finally, Haywood met with Superintendent Jokela, who informed her that "anti-bias training plans 'were in the works' but might not happen until the following school year.'" [Id. at ¶¶ 37-38]. There are no allegations that after the District became aware of Haywood's concerns, there were any further instances of alleged misconduct by Boutwell or any other employee. Simply stated, this is not the stuff of deliberate indifference. See Doe v. Bradshaw, 2013 WL 5236110, at *11 (D. Mass. Sept. 16, 2013) (noting that there were no allegations that the defendants had deliberately avoided remedying the harassment). Thus, the Amended Complaint fails to plausibly allege deliberate indifference, see StandWithUs Ctr. for Legal Just. v. Massachusetts Inst. of Tech., -- F.Supp. 3d --, No. CV 24-10577-RGS, 2024 WL 3596916, at *5 (D. Mass. July 30, 2024) (Stearns, J.) (granting motion to dismiss Title IX claim for failure to adequately allege deliberate indifference), without which there can be no municipal liability based on an alleged failure to adequately train or supervise.

> 2. The Amended Complaint Fails to Sufficiently Plead Discriminatory Intent Required for a Fourteenth Amendment Equal Protection Claim.

The Equal Protection Clause of the Fourteenth Amendment generally provides that similarly situated persons are entitled to receive similar treatment at the hands of government actors. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Preliminarily, because the plaintiff alleges a violation of her rights under the First Amendment, she cannot separately maintain a claim under the Equal Protection Clause to the extent there is overlap

---

discriminatory motive. See, e.g. Bisong v. Univ. of Houston, 493 F. Supp. 2d 896, 915 (S.D. Tex. 2007).

between them. See Pagan v. Calderon, 448 F.3d 16, 36 (1st Cir. 2006) ("To the extent that a plaintiff challenging a discretionary decision to deny a benefit claims to be entitled to redress based on allegations of unconstitutional political discrimination or retaliation, he cannot rely on the Equal Protection Clause but, rather, must bring his claim under the specific provisions of the First Amendment."). Here, NG alleges violation of her First Amendment right to freedom of expression rooted in racial identity; she therefore cannot simultaneously proceed under the Fourteenth Amendment for the same alleged injury. See id.

Assuming that her claim can proceed, to state an equal protection claim, NG must show that she "was treated differently from others similarly situated . . . based on impermissible considerations." Clark v. Boscher, 514 F.3d 107, 114 (1st Cir. 2008). The Supreme Court has held that differential treatment based on suspect classifications (race, national origin, religion, or alienage) is subject to strict scrutiny. See Clark v. Jeter, 486 U.S. 456, 461 (1988) (collecting cases). This means the classification will only be sustained if it was narrowly tailored to achieve a compelling governmental interest. Johnson v. California, 543 U.S. 499, 505 (2005). In addition, a plaintiff must plead sufficient facts to demonstrate "it is plausible that a defendant acted with discriminatory intent." Pimental v. City of Methuen, 323 F. Supp. 3d 255, 270 (D. Mass. 2018) (Saylor, J.). Absent a showing of discriminatory intent, an equal protection claim cannot succeed. E.g., Hayden v. Grayson, 134 F.3d 449, 453 (1st Cir. 1998). Here, the Amended Complaint is noticeably bereft of any plausible allegations that the District acted with any discriminatory intent at all; rather, the Amended Complaint sets out clearly that Boutwell's concern for student safety and both NG and fellow classmates being distracted by the beads.

3. <u>The Existence of an Adequate Postdeprivation Remedy Precludes a Claim Under the Fourteenth Amendment Procedural Due Process Clause</u>.

The Procedural Due Process prong of the Fourteenth Amendment "safeguards individuals against certain offensive government actions, notwithstanding that facially fair procedures are used to implement them." <u>Harron v. Town of Franklin</u>, 660 F.3d 531, 535–36 (1st Cir. 2011). The "basic guarantee" of procedural due process is that, before a deprivation of a protected property interest can take place, a plaintiff "must be forewarned and afforded an opportunity to be heard at a meaningful time and in a meaningful manner." <u>Amsden v. Moran</u>, 904 F.2d 748, 753 (1st Cir. 1990) (quotation omitted). "Whether the deprivation . . . was itself erroneous is beside the procedural due process point." <u>Id</u>. A plaintiff cannot prevail on a procedural due process claim "unless [s]he can show that the state failed to provide [her] with an adequate post-deprivation remedy." <u>Cronin v. Town of Amesbury</u>, 81 F.3d 257, 260 (1st Cir. 1996). "But for this limitation, federal suits might be brought for countless local mistakes by officials administering the endless array of state laws and local ordinances." <u>Herwins v. City of Revere</u>, 163 F.3d 15, 19 (1st Cir. 1998). Post-deprivation remedies include both statutory and common law remedies. See <u>Lowe v. Scott</u>, 959 F.2d 323, 340 (1st Cir. 1992). Here, as set forth in more detail below, the plaintiffs have a fully adequate post-deprivation remedy by way of exhausting administrative remedies and, if that is not successful, filing suit under M.G.L. c. 76, § 5 and under the Massachusetts Tort Claims Act. These adequate post-deprivation remedies defeat any due process claim.

4. <u>The District Retains Sovereign Immunity from Suit under the MCRA and the Amended Complaint Fails to Plausibly Allege Threats, Intimidation, or Coercion</u>.

The District pauses here to address the plaintiffs' claims under the MCRA, and it need not tarry "because under Massachusetts law a municipality cannot be sued under the MCRA." <u>Kelley v. LaForce</u>, 288 F.3d 1, 11 n.9 (1st Cir. 2002) (citing <u>Howcroft v. City of Peabody</u>, 747 N.E.2d

8

729, 744 (Mass. App. Ct. 2001)). This is so because the MCRA only creates a cause of action against persons. See M.G.L. c. 12, §§ 11H (authorizing a claim against "a person or persons") & 11I (incorporating claims "as described in section 11H"). The Massachusetts Legislature has expressly defined "person" to include only "corporations, societies, associations and partnerships." M.G.L. c. 4, § 7 par. 23. Additionally, "separate 'from the statutory context given 'person' by G.L. c. 4, § 7, . . . '[i]t is a widely accepted rule of statutory construction that general words in a statute such as 'persons' will not ordinarily be construed to include the State or political subdivisions thereof.'" Kilbane v. Secy. of Hum. Servs., 438 N.E. 2d 89, 90 (Mass. App. Ct. 1982) (quoting Perez v. Boston Housing Authy., 331 N.E.2d 801, 805 (Mass. 1975), *appeal dismissed*, 423 U.S. 1009 (1975)) (ellipsis added) (other alteration in original). Thus, Counts II-IV alleging violation of the MCRA should separately and independently be dismissed with prejudice because the District's sovereign immunity has not been waived.

Regardless, the Amended Complaint fails for the independent reason that it does not sufficiently allege threats, intimidation, or coercion. The Massachusetts Supreme Judicial Court ("SJC") has defined "threats" for purposes of the MCRA, as "acts or language by which another is placed in fear of injury or damage;" "intimidation" as the "creation of fear to compel conduct;" and "coercion" as "the active domination of another's will." Willitts v. Roman Catholic Archbishop of Boston, 581 N.E.2d 475, 480 n.10 (Mass. 1991). Nothing in the Amended Complaint comes close to alleging that the District by action or words placed NG in fear of injury or damage, created fear to compel her conduct, or actively dominated her will. Thus, the MCRA claims should separately and independently be dismissed with prejudice for failure to adequately allege threats, intimidation, or coercion.

Finally, for all the reasons stated above, the MCRA claims fail on the merits. The SJC has ruled that the rights to freedom of speech/expression, procedural due process, and equal protection under the Massachusetts Constitution are coextensive with the First and Fourteenth Amendments to the United States Constitution. See, e.g., In re Opinion of the Justs. to the Senate, 723 N.E.2d 1, 4 n.3 (Mass. 2000) (freedom of speech); Finch v. Commonwealth Health Ins. Connector Auth., 946 N.E.2d 1262, 1282 n. 3 (Mass. 2011) (equal protection); Liability Investigative Fund Effort, Inc. v. Massachusetts Med. Prof. Ins. Assn., 636 N.E.2d 1317 (Mass. 1994) (procedural due process). Thus, because the plaintiffs' claims under the First and Fourteenth Amendments fail on the merits for the reasons stated above, claims under the cognate provisions of the Massachusetts Constitution must also fail.

### B. Count V (Violation of Title VI) Should be Dismissed Because the Amended Complaint Does Not Adequately Allege Severe, Pervasive, and Objectively Offensive Harassment, a Deprivation of Educational Opportunities or Benefits, or Deliberate Indifference.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." See 42 U.S.C. § 2000d (also known as Section 601 of Title VI). "[P]rivate individuals may sue to enforce § 601 of Title VI and obtain both injunctive relief and damages." Alexander v. Sandoval, 532 U.S. 275, 279 (2001). The Supreme Court has stated it is "beyond dispute . . . that § 601 prohibits *only intentional* discrimination." Id. at 280 (emphasis added). "[I]n the educational setting, a school district is liable for intentional discrimination when it has been 'deliberately indifferent' to teacher or peer harassment of a student." Zeno v. Pine Plains Cent. School Dist., 702 F.3d 655, 665 (2d Cir. 2012). To plausibly state a claim, a plaintiff must allege sufficient facts to show:

> "[T]hat he or she was subject to 'severe, pervasive, and objectively offensive' [ ] harassment by a school peer" on the basis of race, color, or national origin; (2) "that

10

>the harassment caused the plaintiff to be deprived of educational opportunities or benefits"; (3) "[the funding recipient] knew of the harassment (4) in its programs or activities"; and "(5) it was deliberately indifferent to the harassment such that its response (or lack thereof) is clearly unreasonable in light of the known circumstances."

Thomas v. Springfield Sch. Comm., 59 F. Supp. 3d 294, 301 (D. Mass. 2014) (second alteration in original); see Zeno, 702 F.3d at 665-66 (extending Title IX's deliberate indifference framework to Title VI). NG cannot prevail on any these elements.

First, nothing in the Amended Complaint plausibly alleges that NG was subject to severe, pervasive, and objectively offensive harassment. Instead, the Amended Complaint alleges a single instance in which Boutwell asked NG to remove beads from her braids. Nothing about that incident can be classified as severe or pervasive. See, e.g., Pollard v. Georgetwon School Dist., 132 F. Supp. 3d 208, 230 (D. Mass. 2015) (Casper, J.) (noting that the plaintiff did not adequately allege a Title VI discrimination claim because the amended complaint does not contain sufficient, non-conclusory factual allegations that the harassment was severe and pervasive); HB v. Monroe Woodbury Cent. Sch. Dist., 2012 WL 4477552, at *15 (S.D.N.Y. Sept. 27, 2012) (holding that although the plaintiffs alleged that students called the Puerto Rican plaintiff derogatory racial names on numerous occasions, the inclusion of only "one reference to race-related name calling" in the complaint could not establish severe, pervasive and objectively offensive conduct)); HB, 2012 WL 4477552, at *15 (requiring specific allegations of race-related name calling and not simply allegations that of racial names on numerous occasions).

Second, the Amended Complaint does not allege in any fashion that NG was deprived of educational opportunities or benefits. Indeed, the Amended Complaint *only* alleges that NG (and her mother) suffered emotional distress and unidentified "compensatory damages." [ECF No. 1 at ¶¶ 71-72]. Nor can any deprivation of educational opportunities or benefits be inferred from the Amended Complaint. NG continued to be enrolled in the District, which facilitated her transfer to

11

a new school. Simply stated, the Amended Complaint does not allege or identify *any* missed educational opportunities or benefits.

Third, the allegations of the Amended Complaint do not support a finding of deliberate indifference as a matter of law. As noted above, deliberate indifference as 'a stringent standard of fault, requiring proof that a municipal actor disregarded a *known or obvious* consequence of his action' or inaction." Porto, 488 F.3d at 73 (quoting Bd. of the County Commrs. v. Brown, 520 U.S. 397, 410 (1997) (emphasis added)). "[A] claim that the school system could or should have done more is insufficient to establish deliberate indifference." Id. Although there have been few recent cases interpreting the Title VI prohibitions against racial or national origin discrimination in the First Circuit, the provisions of Title VI and Title IX (prohibiting sex discrimination) have been interpreted *in pari materia*. See e.g., Barnes v. Gorman, 536 U.S. 181, 185 (2002) ("Court has interpreted Title IX consistently with Title VI"); Cannon v. Univ. of Chicago, 441 U.S. 677, 696 (1979) ("The drafters of Title IX explicitly assumed that it would be interpreted and applied as Title VI had been during the preceding eight years"). Looking to Title IX standards of liability:

> "[A] hostile environment claim under Title IX requires acts of . . . harassment that are so severe and pervasive as to interfere with the educational opportunities normally available to students. To limn such a claim, the plaintiff must identify 'a cognizable basis for institutional liability.' This necessitates a showing that a federal funding recipient acted with deliberate indifference toward known acts of harassment occurring in its programs or activities."

Santiago v. Puerto Rico, 655 F.3d 61, 73 (1st Cir. 2011) (citations omitted). For all the reasons articulated above with respect to municipal liability, the Amended Complaint likewise does not plausibly allege deliberate indifference sufficient to state a Title VI claim.

Finally, to the extent Count VI seeks recovery of emotional distress damages, [ECF No. 1 at ¶ 71], this form of relief is foreclosed by the Supreme Court's recent decision in Cummings v. Premier Rehab Keller, which held that "emotional distress damages are not recoverable under

the Spending Clause antidiscrimination statutes" such as Title VI. 596 U.S. 212, 222 (2022). Though Cummings addressed claims brought under the Rehabilitation Act and the Patient Protection and Affordable Care Act, the Supreme Court expressly referenced Title VI and Title IX as the other two Spending Clause antidiscrimination statutes. 596 U.S. at 217-218. While the District has not identified any courts applying Cummings to claims under Title VI, recently a court in this District applied Cummings to Title IX—which was also referenced in Cummings. See Doe v. Town of N. Andover, No. 1:20-CV-10310-IT, 2023 WL 3481494, at *11 (D. Mass. May 16, 2023) (Talwani, J.) (applying Cummings to Title IX claims because there is "no basis to treat Title IX differently than the Rehabilitation Act and the ACA"). The same analysis that applies to the other three Spending Clause antidiscrimination statutes (ACA, Rehabilitation Act, and Title IX) should apply equally to Title VI.

## II. THE STATE CLAIMS

### A. This Court Should Exercise its Discretion to Reach the State Law Claims.

"As a general principle, the . . . disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). However, "the termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction but, rather, sets the stage for an exercise of the court's informed discretion." Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256–257 (1st Cir. 1996). "In an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims." Rodriguez, F.3d at 1177. Factors to be considered when retaining supplemental jurisdiction include: (1) whether the claims arise from the same nucleus of facts; (2) whether the question is purely legal; (3) the novelty of the state law claims; and (4) the complexity of the state law claims. See Cavallaro v.

13

UMass Meml. Healthcare, Inc., 678 F.3d 1, 9 (1st Cir. 2012) (affirming District Court's decision not to remand certain state-law claims); see also Rhode Island Bhd. Of Corr. Officers v. Rhode Island, 357 F.3d 42, 45 (1st Cir. 2004) (affirming motion to dismiss that included exercise of supplemental jurisdiction over state law claims); Brown v. Hot, Sexy & Safer Prods., Inc., 68 F.3d 525, 541 (1st Cir. 1995) (same), *abrogated on other grounds*, Martinez v. Cui, 608 F.3d 54 (1st Cir. 2019).

Here, the federal and state claims completely overlap from a factual and a legal standpoint; they all arise from Boutwell asking KG to remove beads from her braids. Moreover, the cognate provisions of the Massachusetts Constitution are interpreted co-extensively with the federal Constitution. See, e.g., In re Opinion of the Justs. to the Senate, 723 N.E.2d at 4 n.3; Finch, 946 N.E.2d at 1282 n. 3; Liability Investigative Fund Effort, Inc., 636 N.E.2d at 1317. Similarly, the challenges to the state law claims are based on purely legal grounds regarding application of immunity, exhaustion, and failure to allege sufficient facts to establish state law claims. Additionally, there is nothing novel or complex about the state law claims; they fail under well-established precedent from Massachusetts appellate courts and this District applying Massachusetts law. Finally, although not specifically a factor, it is important to note that the plaintiffs purposefully filed this action in federal court, joining the state law claims under an invocation of supplemental jurisdiction (as opposed to the District removing the action). In short, all factors and the equities weigh in favor of this Court exercising exercise supplemental jurisdiction over, and dismissing with prejudice, the state law claims. It would create a perverse incentive to allow plaintiffs to file suit in federal court, invoke the federal court's supplemental jurisdiction, but throw up their hands and demand dismissal without prejudice if their chosen forum decides adversely.

### B. Count I Should be Dismissed Because the Plaintiffs Failed to Exhaust their Administrative Remedies.

The Massachusetts statute prohibiting discrimination in education, codified at M.G.L. c. 76, § 5, provides in relevant part:

> "Every person shall have a right to attend the public schools of the town where he actually resides. . . . No person shall be excluded from or discriminated against in admission to a public school of any town, or in obtaining the advantages, privileges and courses of study of such public school on account of race, color, sex, gender identity, religion, national origin or sexual orientation."

M.G.L. c. 76, § 5. Significantly, Section 5 does not expressly create a private right of action for money damages. Instead a separate section in Chapter 76 establishes that the parent, guardian, or custodian of the student has a private right of action in tort *after* exhausting administrative remedies. See M.G.L. c. 76, § 16. Specifically, Section 16 states that a pupil:

> "[W]ho has been refused admission to or excluded from the public schools or from the advantages, privileges and courses of study of such public schools shall *on application* be furnished by the school committee with *a written statement of the reasons therefor*, and thereafter, if the refusal to admit or exclusion was unlawful, such pupil may recover from the town."

M.G.L. c. 76, § 16 (emphasis added).[8] The federal court has held that a public-school student was required to seek administrative redress with the school committee prior to pursuing claim under Section 16. Harrington v. City of Attleboro, 172 F. Supp. 3d 337, 353 (D. Mass. 2016) (Casper, J.) (exhaustion required for a Section 16 claim based on peer-to-peer bullying). There are no allegations in the Amended Complaint that the plaintiffs exhausted their administrative remedies by providing a written statement to the Fitchburg School Committee. The failure to exhaust the Section 16 administrative remedies bars Count I in its entirety. Id. See also Doe v. Holly, No. CV

---

[8] The plaintiffs' references to the Massachusetts Crown Act are clearly inapplicable, as that statute was not adopted for almost a year *after* the alleged incident in this case. The bill was approved in July 26, 2022, and became effective on October 24, 2022. See St. 2022, § 1, eff. Octo 24, 2022..

20-10139-LTS, 2022 WL 1038012, at *4 (D. Mass. Feb. 25, 2022) (Sorokin, J.) (granting summary judgment, in part, where plaintiff failed to first exhaust claim with school committee), *aff'd*, No. 22-1232, 2023 WL 4542949 (1st Cir. July 14, 2023).

In their Amended Complaint, the apparently plaintiffs attempt to rebut the exhaustion argument in two ways. *First*, they point to a presentment letter required by the Massachusetts Tort Claims Act (MTCA). [ECF No. 13 at ¶¶ 49-51]. This argument falls flat for the undeniable reason that a pre-suit presentment letter under the MTCA is not a substitute for the written exhaustion requirement under M.G.L. c. 76, § 16. Indeed, the presentment letter itself—which the plaintiffs reference in their Amended Complaint but conspicuously do not attach—does not seek exhaustion or relief from the School Committee. *Second*, the plaintiffs apparently argue that exhaustion would have been futile because Haywood subjectively believed that the District was "uninterested in taking action to address the underlying causes of what happened. . . ." [ECF No. 13 at ¶ 40]. The District has not located any decision that has ever held that Section 16's exhaustion requirement is subject to a futility exception. The closest case appears to be Goodwin v. Lee Public Schools, 56 N.E.3d 777 (Mass. 2016). In Goodwin, the SJC concluded that a high school student was not required to exhaust administrative remedies under M.G.L. c. 71, § 37H½ prior to bringing a claim under M.G.L. c. 76, § 16. Id. at 783. This was so because "nothing in the language of § 37H½ precludes a student who has been suspended under that statute from seeking to pursue a tort remedy under G.L.c. 76, § 16, without having first pursued or prevailed on appeal of a decision ordering the student's suspension under § 37H½." Id. at 785. Notably, nothing in Goodwin creates a futility exception to exhaustion under M.G.L. c. 76, § 16 itself. Moreover, the District is not aware of *any* cases that has applied a futility exception to an exhaustion requirement based solely on a plaintiff's subjective view of futility, as opposed to actual futility.

Regardless of exhaustion, the MTCA is now the exclusive remedy for damages claims against state and local public employers. See M.G.L. c. 258, § 2 *et seq*. Specifically, for claims of "personal injury … caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, … [t]he remedies provided by this chapter shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the public employer." Id. The passage of the MTCA in 1978 superseded preexisting legal remedies against a governmental entity "regardless of whether the tort claim was within or outside the scope of sovereign immunity before passage of the act." Magliacane v. City of Gardner, 138 N.E.3d 347, 356 (Mass. 2020). Back in 1965, before the enactment of the MTCA, the SJC had ruled that Chapter 76, Section 16 was an exclusive remedy available to a student against a Town, meaning "that this was the only remedy available for one seeking damages *in tort*." Leonard v. Sch. Comm. of Attleboro, 212 N.E.2d 468, 471 (Mass. 1965) (emphasis added). However, once the MTCA was enacted, it became the sole and exclusive remedy to sue public employers in tort. As such, the plaintiffs cannot maintain a cause of action under Chapter 76, Section 16 against the District; any such claim would have to be brought through the MTCA instead. For this additional reason, Count I should be dismissed with prejudice.

C. **Count VI Should Be Dismissed Because the Amended Complaint Fails to Adequately Plead Objective Symptomology and Haywood was Not Present when the Alleged Statements were Made.**

To succeed on a claim for negligent infliction of emotional distress ("NIED"), the plaintiffs must demonstrate "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." Payton v. Abbott Labs, 437 N.E.2d 171, 181 (Mass. 1982). Count VI fails here because neither NG nor Halloway have adequately pleaded any "physical harm manifested by objective symptomatology." Lanier v. President & Fellows of

Harvard Coll., 191 N.E.3d 1063, 1072 (Mass. 2022). Additionally, Halloway's NIED claim must separately be dismissed because she was not present at the time the alleged comments were made.

"The requirement of physical harm is interpreted to include a broad range of symptoms; what is required is only enough 'objective evidence' to 'corroborate [plaintiffs'] mental distress claims." Id. (quoting Sullivan v. Boston Gas Co., 605 N.E.2d 805, 809 (Mass. 1993)). Qualifying symptoms include those that "could be classified as more 'mental' than 'physical,'" provided that they go beyond "mere upset, dismay, humiliation, grief and anger." Gutierrez v. Massachusetts Bay Transp. Auth., 772 N.E.2d 552, 566 (Mass. 2002). Here, NG has not sufficiently alleged a basis for liability with respect to physical symptomology. Rather, she simply alleges a loss of sleep and anxiety. But this Court has previously ruled that "[a]lthough 'sleeplessness' may be one of several objective manifestations of emotional distress, loss of sleep on its own is insufficient to support a claim of negligent infliction of emotional distress (except, perhaps, in extreme cases of debilitating insomnia, which [NG] did not plead here)." Brooks v. Martha's Vineyard Transit Auth., 433 F. Supp. 3d 65, 77 (D. Mass. 2020) (Young, J.) (granting motion to dismiss); accord Sorenson v. H & R Block, Inc., No. CIV.A.99-10268-DPW, 2002 WL 31194868, at *19 (D. Mass. Aug. 27, 2002) (Sorokin, J.), aff'd, 107 F. App'x 227 (1st Cir. 2004) (granting motion for summary judgment where NIED was predicate on conclusory allegations of loss of sleep and appetite). Additionally, courts applying Massachusetts law have repeatedly dismissed NIED claims predicated on generalized, conclusory allegations of "anxiety" when not additionally coupled with physical symptoms. See, e.g., Doe v. Emerson Coll., 153 F. Supp. 3d 506, 517 (D. Mass. 2015) (Saylor, J.) (dismissing emotional distress claim where "complaint allege[d] that the defendants' negligence caused her 'pain and suffering' without any description or explanation of how that emotional distress has manifested in physical symptoms"); Hindle v. Toyota Motor Credit Corp.,

18

No. 18-cv-11306-FDS, 2018 WL 6033484, at *4 (D. Mass. Nov. 16, 2018) (Saylor, J.) (dismissing emotional distress claim where complaint alleged "only that [plaintiffs] experienced a 'great deal of stress and anxiety' and that their emotional distress 'manifested itself in physical symptoms,' " as "injury arising out of negligent infliction of emotional distress requires specific factual allegations, not a mere 'formulaic recitation of the elements' ").

Finally, Halloway cannot recover for emotional distress based on Dziokonski v. Babineau, 380 N.E.2d 1295 (Mass. 1978). In Dziokonski, the Supreme Judicial Court concluded that "the allegations concerning a parent who sustains substantial physical harm as a result of severe mental distress over some peril or harm to [their] minor child caused by the defendant's negligence state a claim for which relief might be granted, where the parent either witnesses the accident or soon comes on the scene while the child is still there." Id. at 1302. Here, Halloway was neither present when Boutwell made the alleged statements and she did not come upon the scene while NG was still in class soon after the alleged statements. Halloway therefore cannot recover for NIED. To further gild the lily, nothing in the Amended Complaint alleges that Halloway suffered her own emotional distress evidenced by objective symptomology.

## V. CONCLUSION

**WHEREFORE**, the defendant Fitchburg Public Schools hereby respectfully requests that this Honorable Court enter an order dismissing all counts of the Amended Complaint brought against them, with prejudice, enter final judgment in their favor, and grant them any such other relief that his Court deems necessary and just.

Respectfully submitted,

The Defendant,

FITCHBURG PUBLIC SCHOOLS,

By its Attorneys,

**PIERCE DAVIS & PERRITANO LLP**

*/s/ Justin L. Amos*

_____

Jason W. Crotty, BBO #656313
Justin L. Amos, BBO #697232
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jcrotty@piercedavis.com
jamos@piercedavis.com

Dated: October 8, 2024

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that an electronic copy shall be served upon those indicated as non-registered participants on October 8, 2024, as follows:

Benjamin C. Rudolph, Esq.
Angela Cavanaugh, Esq.
RUDOLFPH SMITH
446 Main Street, Suite 1503
Worcester, MA 01608
rudolf@rudolfsmith.com
cavanaugh@rudolfsmith.com

*/s/ Justin L. Amos*

_____

Justin L. Amos, Esq.