### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

KRISTENE HAYWOOD, individually and
as next friend of KG, a minor,

*Plaintiffs*,

v.

Civil Action No. 4:24-cv-40071-MRG

FITCHBURG PUBLIC SCHOOLS,

*Defendant*.

### ORDER ON DEFENDANT'S MOTION TO DISMISS (ECF No. 14)

**GUZMAN, J.**

Kristene Haywood ("Haywood") filed this lawsuit on behalf of herself and her minor daughter, KG (collectively, "Plaintiffs"), against Defendant Fitchburg Public Schools ("FPS") alleging civil rights violations under federal and state law. Pending before the Court is Defendant's Motion to Dismiss [ECF No. 14]. For the reasons stated below, the Motion to Dismiss is **GRANTED**.

### I.    BACKGROUND

Haywood's daughter, KG, a Black student, began kindergarten at Reingold Elementary School ("Reingold" or "Reingold Elementary") in Fitchburg, Massachusetts around September 2021. [ECF No. 13 ("Am. Compl.") ¶¶ 5, 13].  Prior to attending school, KG would wear her "hair in braids with beads as an essential expression of her Black identity and heritage." [Id. ¶ 12]. For many Black women and girls, braided hairstyles, often ordained with beads, have long "serve[d] as an outward expression of self-acceptance and self-love." [Id. ¶ 9]. Yet, throughout American

1

history, Black women have frequently faced discrimination based on the way they choose to wear their hair. [Id. ¶¶ 10-11]. KG's mother, Kristene Haywood ("Haywood"), who is also Black, "takes pride in Black culture and strives to pass that pride on to her children through teaching an example." [Id. ¶ 6]. Therefore, to both KG and her mother, KG's hairstyle serves as a proud expression of her Black identity.

On November 26, 2021, before returning to school after a period of quarantine from exposure to a family member with COVID-19, KG asked her mother to take out her beads and braids. [Id. ¶¶ 17-18]. KG informed her mother that her teacher, Julie Boutwell ("Boutwell"), who is white, had told her that her braids were "distracting" and "loud." [Id. ¶ 21]. It was later revealed that the teacher made these comments to KG in front of the entire class. [Id. ¶ 26]. Haywood promptly had a phone conversation with Boutwell to discuss these comments. [Id. ¶ 22]. During that conversation, Boutwell stated that "she 'didn't mean it like that' but that the beads were 'distracting to [KG] and others.'" [Id. ¶ 24 (alterations in original)].

After an initial meeting with Justin Sparks, the Interim Principal of Reingold ("Principal Sparks"), where he expressed that Boutwell was apologetic, Haywood had a follow-up meeting that additionally included Boutwell and Eva Kelley, a School Choice Officer. [Id. ¶¶ 27-29]. In the meeting Boutwell was apologetic, but made comments that "KG's hair posed a supposed 'safety' issue" and threatened Haywood with a complaint of slander. [Id. ¶¶ 31-32]. During the meeting, Kelley mentioned to Haywood that she would be willing to help KG transfer to a new school. [Id. ¶ 34]. After the meeting, Principal Sparks "acknowledged in an email that KG had felt like she did not belong at Reingold Elementary School and that he needed 'to have further conversations with this teacher and as a school community.'" [Id. ¶ 36].

Following the meeting, Haywood met with Superintendent Robert Jokela to "request[] that Boutwell be required to undergo anti-bias training." [Id. ¶ 37]. The Superintendent let Haywood know that "anti-bias training plans were 'in the works' but might not happen until the following school year." [Id. ¶ 38]. From the conversation, Haywood got the impression that the Superintendent was not taking her concerns seriously and felt like further conversations would be "futile." [Id. ¶¶ 38, 40].

During December of 2021, KG transferred to Crocker Elementary, but "continued to exhibit signs of stress and trauma," including an unwillingness to wear beads in her hair "out of concern for how they will be viewed by teachers and classmates." [Id. ¶¶ 41-45]. Additionally, KG "continues to suffer from stress and anxiety every time she gets her hair done." [Id. ¶ 46].

As a result of these events, Plaintiffs filed a complaint with this Court on May 8, 2024. [ECF No. 1]. On September 24, 2024, Plaintiffs amended their complaint. [ECF No. 13]. FPS responded on October 8, 2024, by filing the currently pending motion to dismiss. [ECF No. 14]. On October 22, 2024, Plaintiffs filed a brief in opposition to the motion to dismiss. [ECF No. 16]. At the request of the Court, FPS filed a reply brief on July 16, 2025. [ECF No. 21]. The matter is therefore ripe for decision.

## II.    LEGAL STANDARDS

A complaint "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). But under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss an action arguing that it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).

On a motion to dismiss made pursuant to Rule 12(b)(6), the factual allegations in the complaint are accepted as true, and the Court draws "all reasonable inferences in favor of the plaintiff." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (citing Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992)).

## III.    DISCUSSION

### A.  Section 1983 Claims (Counts II, III, and IV)

Section 1983 "is a vehicle through which individuals may sue certain persons for depriving them of federally assured rights," such as the First Amendment's right to free speech (Count II) or the Fourteenth Amendment's rights to equal protection (Count III) and due process (Count IV). Gagliardi, 513 F.3d at 306. In order to succeed on a Section 1983 claim, a plaintiff must show that defendants acted under the color of state law, and that his or her conduct deprived plaintiff of rights secured by the Constitution or by federal law. Id. (citing Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997)).

A school district may be held liable under Section 1983 when a policy or custom is directly "responsible for a deprivation of rights that is protected by the Constitution." Monell v. Dep't Soc.

4

<u>Servs.</u>, 436 U.S. 658, 690 (1978). Liability cannot be imposed through a theory of vicarious liability premised "solely on the basis of the existence of an employer-employee relationship with a tortfeasor." <u>Id.</u> at 691-92. However, a municipality can be held liable for the actions of their employees based on a "failure to train" theory. <u>See</u> <u>Maldonado-Denis v. Castillo-Rodriguez</u>, 23 F.3d 576, 582 (1st Cir. 1994) (explaining that "inadequate training of subordinates may be a basis for a section 1983 claim against a superior officer").

When a plaintiff brings a claim based on failure to train, the complaint must establish that the lack of training amounted to a "city 'policy or custom' that is actionable under § 1983." <u>City of Canton</u>, 489 U.S. 378, 389 (1989). In other words, a plaintiff must allege that the failure to train was "the moving force behind the deprivation of constitutional rights." <u>Bordanaro v. McLeod</u>, 871 F.2d 1151, 1156 (1st Cir. 1989). To establish that a "policy" was the "moving force," the complaint must allege a "causal link between the municipality's policy and the plaintiff's injury and that municipal decisionmakers knew or should have known [that the policy was inadequate but] nonetheless exhibited deliberate indifference [as to its] unconstitutional effects." <u>Mazza v. City of Boston</u>, No. 24-10333-NMG, 2025 U.S. Dist. LEXIS 80441, at *5 (D. Mass. Apr. 28, 2025) (alterations in original) (quoting <u>Bordanaro</u>, 871 F.2d at 1156).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011) (internal citations omitted); <u>see</u> <u>City of Canton</u>, 489 U.S. at 389 ("[A] deliberate choice to follow a course of action is made among various alternatives."). This requires a plaintiff to demonstrate more than an "isolated instance of unconstitutional activity," but rather, that there was a "'pattern of . . . constitutional violations' similar to the defendant's." <u>Mazza</u>, 2025 U.S. Dist. LEXIS 80441, at *6 (quoting <u>Aprileo v. Clapprood</u>, No. 3:21-cv-30114-MGM, 2024 U.S. Dist.

LEXIS 126426, at *9 (D. Mass. May 21, 2024)); see Connick, 563 U.S. at 62 ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train"); Santiago v. Bloise, 741 F. Supp. 2d 357, 363 (D. Mass. 2010) ("Evidence of this single event is insufficient support for the court to conclude a policy of deliberate indifference.").

Having established the applicable legal framework, the Court will now take each of Plaintiffs' Section 1983 claims in turn.

###     I.    Count II: Freedom of Expression

It has long been established that the First Amendment protects not only "pure speech," but also certain forms of "symbolic acts" that are viewed as "expression." See Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 505-06 (1969) (holding that a student's decision to wear a black armband to protest the Vietnam War was protected expression under the First Amendment). Although many circuits have been divided on whether the right to wear one's hair as one chooses constitutes "expressive conduct" protected by the First Amendment, the First Circuit has held that it does not. Richards v. Thurston, 424 F.2d 1281, 1283 (1st Cir. 1970) ("We reject the notion that plaintiff's hair length is of a sufficiently communicative character to warrant the full protection of the First Amendment."); see Williams v. Hathaway, 400 F. Supp. 122, 126 (D. Mass. 1975) (holding that while a hairstyle may reflect and individualistic choice, it is not inherently "expressive or communicative" to warrant First Amendment protection).

Plaintiffs allege that Boutwell "violated the Plaintiffs' rights to freedom of expression . . . by requiring her to remove her beads and braids as a condition of attending school." [Am. Compl. ¶ 68]. Because courts across the country are divided on whether hairstyle constitutes expressive conduct, and in the absence of any new precedent from the First Circuit or this Court, we adhere

to the holding that a hairstyle does not qualify as "expressive conduct" protected by the First Amendment. See Richards, 424 F.2d at 1283; Williams, 400 F. Supp. at 126. Accordingly, Plaintiffs' First Amendment rights were not violated when Boutwell asked KG to change her hairstyle.[1] As explained above, municipal liability under Section 1983 requires an underlying constitutional violation. See Cox v. City of Boston, No. 22-11009-RGS, 2024 U.S. Dist. LEXIS 196207, at *14 (D. Mass. Oct. 29, 2024); Keller v. Town of Monson, No. 3:20-cv-30187-KAR, 2024 U.S. Dist. LEXIS 51282, at *23 (D. Mass. Mar. 22, 2024). Because Plaintiffs have failed to plausibly allege a First Amendment violation, their Section 1983 claim necessarily fails.

However, assuming that Plaintiffs were able to establish an underlying constitutional violation, their claim would for municipal liability under Section 1983 would still be deficient. Plaintiffs assert that FPS' failure to train their teachers on protective hairstyles amounts to "deliberate indifference to KG's rights." [ECF. No. 16 at 6-7]. This requires Plaintiffs to establish a causal link between Boutwell's actions towards KG and FPS's deliberately indifferent failure to adopt an adequate training policy. See Mazza, 2025 U.S. Dist. LEXIS 80441, at *5; Connick, 563 U.S. at 61. The Amended Complaint fails to establish this causal link. Mazza, 2025 U.S. Dist. LEXIS 80441, at *5. Although Boutwell's conduct may have been harmful, an isolated incident is insufficient to support an inference that the failure to train rose to the level of an FPS "policy." See Oklahoma City v. Tuttle, 471 U.S. 808, 821 (1985) (recognizing that it is "difficult" to say "that someone pursues a 'policy' of 'inadequate training,' unless evidence be adduced which proves that the inadequacies resulted from conscious choice – that is, proof that the policymakers deliberately chose a training program which would prove inadequate"); Argueta v. City of Revere, No. 09-

---

[1] Further, to the extent that Plaintiffs are alleging a First Amendment claim on behalf of Haywood, the Amended Complaint fails to allege any facts that would raise any plausible claim that Defendant violated her right to Freedom of Expression. [See generally Am. Compl.]. Namely, the Amended Complaint fails to sufficiently allege a First Amendment violation for either Haywood, individually, or as KG's next of friend.

10268-RGS, 2009 U.S. Dist. LEXIS 71782, at *3-4 (D. Mass. Aug. 11, 2009) (dismissing plaintiff's failure to train claim on the ground that a single incident is insufficient to establish deliberate indifference); Santiago, 741 F. Supp. 2d at 363 (dismissing plaintiff's failure to train claim on the grounds that the complaint only alleges "facts about a specific incident[,]" which is insufficient to support the inference that the alleged failure to train constituted an official municipal policy). In the absence of a pattern of constitutional violations, a municipality's failure to train its employees does not amount to deliberate indifference. See Connick, 563 U.S. at 62.

Nor does the Amended Complaint establish that FPS was aware of the lack of an adequate training policy and consciously disregarded the need to adopt one. See id. While Plaintiffs reference FPS's statements that anti-bias training were "in the works," [Am. Compl. ¶ 38], which suggests that such trainings were not yet in place, that assertion alone does not sufficiently establish that the lack of training resulted from a deliberate choice by FPS. See Oklahoma City, 471 U.S. at 823; Bordanaro, 871 F.2d at 1156 (holding that the unconstitutional behavior "must be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice"). In fact, the statement that the trainings were forthcoming indicates that FPS was not consciously choosing to ignore or forgo training. Without more, this acknowledgment does not support a plausible claim that FPS acted with deliberate indifference.

Although what happened to KG was an unfortunate incident, this Court is mindful of Justice White's caution in City of Canton:

> To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident.

489 U.S. at 389 (quoting <u>Oklahoma City</u>, 471 U.S. at 823). Absent specific, well-pled facts establishing deliberate indifference, Plaintiffs' failure to train claim cannot proceed and consequently, their First Amendment claim falls. Defendant's motion to dismiss Count II must be granted.[2]

## II.      Count III: Equal Protection

The Equal Protection Clause "prohibits a state from treating similarly situated persons differently because of their classification in a particular group." <u>Mulero-Carrillo v. Román-Hernández</u>, 790 F.3d 99, 105-06 (1st Cir. 2015). A viable equal protection claim requires "proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." <u>Freeman v. Town of Hudson</u>, 714 F.3d 29, 38 (1st Cir. 2013) (quoting <u>Rubinovitz v. Rogato</u>, 60 F.3d 906, 909-10 (1st Cir. 1995)). In the context of student harassment, the plaintiff must demonstrate that school officials "treated [him] differently from others similarly situated, either intentionally or with deliberate indifference." <u>Doe v. Town of Stoughton</u>, No. 12-cv-10467-PBS, 2013 U.S. Dist. LEXIS 173030, at *4 (D. Mass. Dec. 10, 2013). Accordingly, the plaintiff "must identify his [or her] putative comparators," <u>Harron v. Town of Franklin</u>, 660 F.3d 531, 537 (1st Cir. 2011), and "adduce competent evidence of purposeful discrimination." <u>Meléndez-García v. Sánchez</u>, 629 F.3d 25, 38 (1st Cir. 2010) (quoting <u>Hayden v. Grayson</u>, 134 F.3d 449, 453 (1st Cir. 1998)).

---

[2]  The Plaintiffs' opposition brief notes an additional allegation that Defendant violated Section 1983 by acting with deliberate indifference in their response to Boutwell's complaints regarding the treatment of KG. [ECF No. 16 at 8]. However, because Plaintiff did not assert this claim in their Amended Complaint, [Am. Compl.], the Court will not consider new claims raised for the first time in opposition filings. <u>See</u> <u>Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 267 F.3d 30, 33 (1st Cir. 2001) ("In ruling on a motion to dismiss . . . a court may not consider any documents that are outside of the complaint . . . unless the motion is converted into one for summary judgment.").

Plaintiffs' Amended Complaint fails to sufficiently allege an Equal Protection violation because it does not adequately establish that KG and Haywood were treated differently than their similarly situated peers. The Amended Complaint merely states that "FPS treated KG and her mother differently from similarly situated students and their parents on the basis of race" without providing any additional detail about how this treatment was in fact different than the treatment of their "putative comparators." [Am. Compl. ¶ 73]; Harron, 660 F.3d at 537. Plaintiffs' statements are simply recitations of the legal standard, and without further allegations showing that Plaintiffs were in fact treated differently, their Equal Protection claim fails. Without an underlying constitutional violation, Plaintiffs' municipal liability claims necessary fail too. See Cox, 2024 U.S. Dist. LEXIS 196207, at *14; Keller, 2024 U.S. Dist. LEXIS 51282, at 23.[3]

### III.    Count IV: Procedural Due Process

In their opposition brief, Plaintiffs claim that they are willing to waive their procedural due process claim, provided there is an avenue for relief under Mass. Gen. Laws ch. 76, §§ 5, 16. [ECF No. 16 at 10]. Because Section 5 does not expressly provide a mechanism for seeking compensatory damages, Plaintiffs pursue such relief through Section 16. [Am. Compl. ¶¶ 60, 64]. However, Defendants argue that Section 16 does not provide Plaintiffs an avenue for relief because they failed to exhaust their administrative remedies. [ECF No. at 15].

The parties rely on Goodwin v. Lee Public Schools, 56 N.E.3d 777 (Mass. 2016) as instructive on this question. [ECF No. 15 at 16; ECF No. 16 at 12-13]. There, the plaintiff brought a claim alleging that a school violated Mass. Gen. Laws ch. 71, § 37H1/2 ("Section 37H1/2"), a

---

[3] Even if Plaintiffs were able to establish an Equal Protection violation, their claim for municipal liability under Section 1983 would still be deficient. For reasons discussed supra, Plaintiffs' Amended Complaint does not sufficiently establish a causal link between FPS's failure to train and Boutwells treatment of KG. Therefore, Plaintiffs' claim Equal Protection claim is not sufficiently plead under Section 1983.

state law regulating school discipline. 56 N.E.3d at 783. Plaintiff additionally raised a tort under Mass. Gen. Laws ch. 71, § 16 ("Section 16"). Id. In light of both claims, the question facing the Massachusetts Supreme Judicial Court was whether Section 16 provided an independent avenue for relief, or whether the plaintiff was first required to exhaust her administrative remedies provided under Section 37H1/2. Id. at 779. The court found in the affirmative of the former, holding that "the tort recovery a student may seek under [Section] 16, provides a separate and distinct remedy from that available under § 37H1/2." Id. Accordingly "the plaintiff was not obligated to exhaust the statute's administrative remedies before pursuing a tort claim under [Section] 16." Id.

Defendants posit that Goodwin is inapplicable because it was clear that Section 37H1/2 had been violated and therefore there was no further need for the plaintiff to exhaust administrative remedies before seeking a tort remedy under Section 16. [ECF No. 21 at 6-7]. However, their position is entirely baseless and misinterprets the holding. The Supreme Judicial Court made clear that Section 16 affords a "separate and distinct remedy[,]" independent of whether administrative remedies under other statutes had been exhausted. 56 N.E.3d at 779. Accordingly, Plaintiffs here may pursue a tort remedy under Section 16.

Nevertheless, in order to state a viable claim under Section 16, Plaintiffs must sufficiently allege that KG was "refused admission to or excluded from the public school[] or from the advantages, privileges and courses of study[.]." Mass. Gen. Laws ch. 76, § 16. For similar reasons as discussed infra, the Amended Complaint fails to do so. KG was never asked to leave Reingold Elementary, nor was she excluded from the school or its programs. [See generally Am. Compl.]. Instead, KG's departure from Reingold Elementary was a direct result of a negotiated departure between Haywood and the staff at the school. [See id. ¶¶ 34-36, 41]. Because Plaintiffs fail to

adequately allege that KG was unlawfully excluded under Section 16, the statute cannot provide a remedy.

**B.  <u>Count V: 42 U.S.C. § 2000d</u>**

Title VI of the Civil Rights Act of 1964 establishes that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. A school district can be held liable for "intentional discrimination when it has been 'deliberately indifferent' to teacher or peer harassment of a student." <u>Pollard v. Georgetown Sch. Dist.</u>, 132 F. Supp. 3d 208, 230 (D. Mass. 2015) (quoting <u>Zeno v. Pine Plains Cent. Sch. Dist.</u>, 702 F.3d 655, 665 (2d Cir. 2012)). To meet this standard, the Plaintiff must show that: "(1) plaintiffs were "subject to 'severe, pervasive, and objectively offensive' . . . harassment"; (2) the harassment "caused the plaintiff to be deprived of educational opportunities or benefits"; (3) the school "knew of the harassment"; (4) the harassment occurred "in [the school's] programs and activities"; and (5) the school "was deliberately indifferent to the harassment such that its response (or lack thereof) is clearly unreasonable in light of the known circumstances." <u>StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech.</u>, 742 F. Supp. 3d 133, 141-42 (D. Mass. 2024) (quoting <u>Porto v. Town of Tewksbury</u>, 488 F.3d 67, 72-73 (1st Cir. 2007)).

Plaintiffs fail to establish a Title VI violation because their Amended Complaint does not adequately allege that harassment by Boutwell was sufficiently severe and pervasive. "[H]arassment that is so severe, pervasive, and objectively offensive . . . effectively bars the victim's access to educational opportunity of benefit." <u>Davis v. Monroe Cnty. Bd. of Educ.</u>, 526 U.S. 629, 633 (1999). In other words, a plaintiff must allege that the educational environment became so inaccessible or intolerable that they were effectively compelled to withdraw. <u>See, e.g.</u>,

Brown v. Univ. of Mass. Amherst, No. 22-30068-FDS, 2023 U.S. Dist. LEXIS 36537, at *18 (D. Mass. Mar. 6, 2023) (finding severe and pervasive harassment where "plaintiff withdrew from a course" because the idea of interacting with the harasser "was too much to handle"); Doe v. Town of Stoughton, No. 12-10467-PBS, 2013 U.S. Dist. LEXIS 167334, at *5-6 (D. Mass. Nov. 25, 2013) (alleged harassment led to suicide attempts and intensive outpatient care that "contributed to severe physical and mental health issues, causing her to withdraw from school").

In the instant case, Haywood was not in any way compelled to withdraw KG from Reingold because of the incident with Boutwell. Instead, the school and Haywood worked together to arrange a transfer. The idea of leaving Reingold was first raised by Eva Kelley, a School Choice Officer, who offered to assist Haywood in helping "KG transfer to a new school if Haywood wanted her to." [Am. Compl. ¶ 34 (emphasis added)]. Haywood subsequently met with Principal Sparks to discuss KG's transfer to Crocker Elementary School. [Id. ¶ 35]. While later that day Principal Sparks acknowledged in an email that "KG had felt like she did not belong at Reingold Elementary School," [id. ¶ 36], the Amended Complaint is otherwise devoid of any allegations indicating that these feelings were, as an initial matter, caused by the incident with Boutwell and, if so, whether the incident contributed to an environment that was so offensive as to compel her transfer. Without more, the facts in the Amended Complaint suggest that KG left Reingold Elementary under a negotiated departure, not one compelled by harassment so severe and pervasive that it rendered educational access unattainable.

However, even if this Court were to accept that the harassment barred KG from educational opportunities, a single incident of this nature, though objectively offensive, does not rise to the level of severity and pervasiveness requires to establish a hostile environment under Title VI. [See generally Am. Compl.]; see StandWithUs Ctr. for Legal Just., 742 F. Supp. 3d at 141-42; Pollard,

132 F. Supp. 3d at 230-31 (holding that "snide [stereotypical] comments" directed at a Jewish student, were "objectively offensive," they did "not meet the high standard of severity of pervasiveness" required by law); see also Atkins v. Bremerton Sch. Dist., No. C04-5779RBL, 2005 U.S. Dist. LEXIS 49094, at *7 (W.D. Wash. June 7, 2005) (holding that an isolated derogatory remark by a teacher, followed by an apology, was insufficient to support a Title VI claim); HB v. Monroe Woodbury Cent. Sch. Dist., No. 11-cv-5881-CS, 2012 U.S. Dist. LEXIS 141252, at *15 (S.D.N.Y. Sept. 27, 2012) (finding that a single instance of derogatory name calling directed at a Puerto Rican student did not rise to the level of severity and pervasiveness required to support a claim under Title VI). Here, Plaintiffs' Amended Complaint alleges only one instance in which Boutwell directed offensive comments at KG. [Am. Compl. ¶ 20]. While Boutwell's remark may have been "objectively offensive," a single incident of this nature does not rise to the high threshold of being severe and pervasive. Therefore, Plaintiffs do not sufficiently allege a claim under 42 U.S.C. § 2000d and must be dismissed.

### C.  State Claims (Counts I and VI)

Having determined that Counts II, III, IV, and V fail, and "given that the [Plaintiffs'] basis for this Court's subject matter jurisdiction was the purported presence of a federal question[,]" the Court will not exercise supplemental jurisdiction over Counts I (discrimination in public school claim) and VI (negligent infliction of emotional distress), which are purely state law claims. Ryan v. UMass Mem'l Health, 728 F. Supp. 3d 215, 221 (D. Mass. 2024) (collecting cases). "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right[.]" United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (citations omitted). As such, if claims arising under the Constitution or federal law are dismissed before trial, any remaining state claims should be dismissed too as a matter of comity and to promote justice between the parties. See id. At such an

early stage in the litigation, the equities do not weigh in favor of the Court retaining jurisdiction. With pretrial discovery or trial preparation yet to occur, the parties have invested relatively little time or resources into the suit. See Rivera-Diaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 392 (1st Cir. 2014). The Court accordingly declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses them without prejudice to Plaintiffs filing suit in state court. See Grispino v. New England Mut. Life Ins. Co., 358 F.3d 16, 19 (1st Cir. 2004). Plaintiffs may alternatively refile the claims in this Court as part of a second amended complaint if the facts warrant raising federal claims.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, [ECF No. 14], is **GRANTED**.


**SO ORDERED**.

Dated: September 25, 2025

                                    /s/ Margaret R. Guzman
                                    Margaret R. Guzman
                                    United States District Judge